929 So.2d 1105 (2006)
Vondyleyn M. SUTTON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-527.
District Court of Appeal of Florida, Fourth District.
May 10, 2006.
Rehearing Denied June 19, 2006.
*1106 Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Vondyleyn M. Sutton, appeals his convictions and sentences for second degree murder and attempted second degree murder, both committed while he was in actual possession of a firearm. We affirm the convictions but remand for resentencing.
In seeking a reversal of the convictions, Sutton raises four points on appeal, none of which warrant a reversal. However, we address Sutton's assertion that the trial court committed fundamental error when it instructed the jury upon the justifiable use of deadly force in a manner that negated Sutton's claim of self-defense.
The trial court read the following instruction without objection:
An issue in this case as to counts one and two is whether the Defendant acted in self-defense. It is a defense to the offense with which Vondyleyn Sutton charged [sic] if the death of Jawon Matthews or the attempted injuries of Therrell Gosier resulted from the justifiable use of force likely to cause death or great bodily harm.
A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another.
However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
Vondyleyn Sutton was attempting to commit, committing, or escaping after the commission of an unlawful murder or an attempted murder.
The instruction is misleading because the trial court instructed the jury that Sutton's forcible felonies were first degree murder and attempted first degree murder which were the very acts Sutton was seeking to justify by use of deadly force. As read to the jury, this instruction would negate Sutton's theory of self-defense. See Giles v. State, 831 So.2d 1263 (Fla. 4th DCA 2002). This error has been found to be fundamental. Rich v. State, 858 So.2d *1107 1210 (Fla. 4th DCA 2003). See also Estevez v. State, 901 So.2d 989 (Fla. 4th DCA 2005); Williams v. State, 901 So.2d 899 (Fla. 4th DCA 2005); Hardy v. State, 901 So.2d 985 (Fla. 4th DCA 2005); Dunnaway v. State, 883 So.2d 876 (Fla. 4th DCA 2004); Carter v. State, 889 So.2d 937 (Fla. 5th DCA 2004). However, the jury instruction that was given does not constitute fundamental error if the evidence adduced at trial does not support a self-defense instruction. See Thomas v. State, 918 So.2d 327 (Fla. 1st DCA 2005); Hickson v. State, 917 So.2d 939 (Fla. 4th DCA 2005); Berrios v. State, 781 So.2d 455 (Fla. 4th DCA 2001).
The evidence introduced at trial established that Sutton and two companions went to a house in Pompano Beach to confront a person known as "Loclock." One of Sutton's companions allegedly was in an altercation with Loclock the previous evening and had sustained injuries. At the time Sutton arrived at the house in search of Loclock, there were several people in the front yard of the home including Jawon Matthews, a twelve-year-old boy. Sutton exited his vehicle brandishing a handgun and demanding that the individual known as Loclock identify himself. The people in the front yard of the home began to flee.
Sutton's statement to the police was introduced at trial. In his statement, Sutton said that he thought that one of the individuals, who he believed to be Loclock, was running toward the house and that this individual might be going to retrieve a weapon. At that time Sutton fired a warning shot which struck either a window or a glass table. Thereafter, he "lost control" of the trigger of the handgun and fired a second time. As he turned to return to his vehicle, he stumbled on some stones in the front yard which caused him to discharge the weapon two more times. There were numerous eyewitnesses who testified. Their testimony contradicted Sutton's version of events. They testified that Sutton actually placed the barrel of the handgun within inches of Jawon Matthews, shooting him and causing his death.
Before a defendant is entitled to "the defense of self-defense, he must establish his life was in imminent danger and he could not safely retreat." Hunter v. State, 687 So.2d 277, 278 (Fla. 5th DCA 1997). "A defendant seeking refuge in a claim of self-defense `must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life.'" Thomas, 918 So.2d at 330 (quoting Brown v. State, 454 So.2d 596, 599 (Fla. 5th DCA 1984)). "A trial court errs by giving the self-defense instruction where the facts indicate that, as a matter of law, it was unreasonable for a defendant to resort to deadly force." Thomas, 918 So.2d at 330. In this case, there was no evidence adduced to indicate that Loclock was in possession of a weapon, that Loclock was going to retrieve a weapon inside the house or that Sutton was in imminent danger. The first time he fired the handgun was as a warning shot which struck either a glass table or window. In addition to it being a mere supposition by Sutton that Loclock was going into the house to retrieve a weapon, his own statement reflects that each time he fired the handgun after the warning shot it was not in self-defense but due either to his inability to control the trigger or his stumbling over stones in the front yard. Accordingly, Sutton was not entitled to an instruction on the use of deadly force in self-defense.
We now turn our attention to Sutton's assertion that the trial court erred in sentencing him as a prison releasee reoffender on his conviction for second degree murder with a firearm and as a habitual felony offender on his conviction for attempted *1108 second degree murder with a firearm. At sentencing the state, seeking imposition of sentences as a prison releasee reoffender and a habitual felony offender, introduced, over Sutton's hearsay and confrontation clause objection, a letter from the Department of Corrections stating when Sutton was last released from prison. In order to have Sutton sentenced as a prison reoffender for second degree murder, the state was required to prove that he committed the offense within three years of a release from a state correctional facility. See § 775.082(9)(a)1, Fla. Stat. (2001). In order to have Sutton sentenced as a habitual felony offender for the attempted second degree murder, the state was required to prove that Sutton was previously convicted of two or more felonies and that the attempted second degree murder was committed within five years of his release from a prison sentence that was imposed as a result of a prior conviction for a felony. See § 775.084(1)(a), Fla. Stat. (2002). The letter from the Department of Corrections which was introduced was signed by Michael E. Deason, as Correctional Services Assistant Administrator, and read:
I, MICHAEL E. DEASON, CORRECTIONAL SERVICES ASSISTANT ADMINISTRATOR, CENTRAL RECORDS, STATE OF FLORIDA DEPARTMENT OF CORRECTIONS, DO HEREBY CERTIFY THAT THIS SEAL IS THE OFFICIAL SEAL OF THE DEPARTMENT OF CORRECTIONS. I ALSO CERTIFY THAT THE LAST RELEASE DATE FOR INMATE VON SUTTON, DC# 186513, B/M, DOB: 7/17/72, WAS OCTOBER 1, 2000, FOR CASES # 92-11822, # 94-234, # 95-1894, BROWARD COUNTY, FLORIDA.

We find that it was error to admit this letter as a basis for enhancing Sutton's sentence as a prison releasee reoffender and a habitual felony offender because the letter was clearly hearsay and therefore inadmissible.
"Where nothing more than inadmissible hearsay received over specific objection is adduced in order to prove a prison release date necessary for sentence enhancement, the enhanced sentence cannot withstand attack on direct appeal." Gray v. State, 910 So.2d 867, 870 (Fla. 1st DCA 2005). Mr. Deason's written statement concerning Sutton's release date constituted hearsay and the state did not establish the predicate for admission of the statement as a business record as an exception to the hearsay rule. Because the release letter was the sole evidence relied upon to establish that Sutton qualified as a prison releasee reoffender and habitual felony offender, we reverse and remand for resentencing. The state shall have the opportunity to present and substantiate Sutton's prison release date, and if it does so, the trial court may again sentence Sutton as a prison releasee reoffender and a habitual felony offender. See Boyd v. State, 776 So.2d 317 (Fla. 4th DCA 2001).
Affirmed in Part; Reversed in Part and Remanded.
WARNER and GROSS, JJ., concur.